# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>$32,000.00 IN UNITED STATES CURRENCY,<br><br>　　　　Defendant. | CASE NO.: 3:21-CV-00519-RCJ-CLB<br><br>**ORDER STRIKING JUDGMENT IN A CIVIL CASE (ECF NO. 15)** |

On August 19, 2022, the Clerk of the Court entered judgment in a civil case against the $32,000.00 in United States Currency Tommy Gene Moss (ECF No. 15).

Rule 60(a) provides the court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall **STRIKE** and **RESCIND** the Judgment in a Civil Case ECF No. 15 from the Court's docket.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the attached Default Judgment of Forfeiture and Final Judgment of Forfeiture.

**IT IS SO ORDERED**.

Dated August 25, 2022.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　ROBERT C. JONES
　　　　　　　　　　　　　　　　　　　　United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$32,000.00 IN UNITED STATES CURRENCY,<br><br>    Defendant. | 3:21-CV-519-RCJ-CLB<br><br>**Default Judgment of Forfeiture and Final Judgment of Forfeiture** |

## I.   FACTS

On May 24, 2021, at approximately 12:17 p.m., Tommy Gene Moss (Moss) was driving a maroon Dodge Ram 3500 truck, bearing a Missouri license plate, pulling a trailer on Interstate 80 westbound in Washoe County, Nevada. The trailer was carrying two large water tanks on its flat bed. Moss was the only occupant of the vehicle.

A Washoe County Sheriff's Office (WCSO) officer observed the truck crossing the white line two times within a short distance and could not see a license plate on the trailer.

The WCSO officer initiated a traffic stop of the truck for the following violations of Nevada law: Failure to Maintain Lane and Improper Display of License Plate. Upon approaching the vehicle, the WCSO officer saw a license plate on the trailer's left side near the fender. The license plate was blocked by the trailer's rear taillight, making it difficult to see. The officer also noticed that the water tanks appeared to have been used and there was a small amount of water inside the bottom of the water tanks.

The WCSO officer approached the truck and made contact with the occupant, Moss, and advised Moss of the reasons for the stop. The officer requested the vehicle's

documentation and Moss's driver's license. The officer observed a strong odor of air freshener coming from within the vehicle. While Moss provided his license and looked for the vehicle information, Moss stated that he was taking the water tanks to a friend in Willits, California. Moss stated that his friend had bought property in Willits. Willits, California, is a source area for marijuana grows. People involved in illegal marijuana grows will utilize water tanks to water their marijuana when there is not a city or natural water source near the grow.

Moss was trying to find the registration and insurance and stated the insurance was on his phone. The officer requested that Moss exit the vehicle so that the officer could show Moss how the license plate was blocked by the taillight of the trailer. Moss told the officer that the trailer belonged to Moss's neighbor, who was later identified as Erbin Smith through a registration check.

While completing a wants and warrants check and warning citation, the officer continued to talk to Moss. Moss stated that he was only being paid gas money to take the water tanks to Willits. During this time, Moss was still trying to obtain proof of insurance.

Moss told the officer that he had left Missouri the previous morning at 6:00 a.m. and stopped once to sleep for a few hours. The officer later discovered via a Google Maps search that Moss's residence at Foley, Missouri, is a 26-hour drive to Reno, Nevada, without ever stopping for gas, sleep, or other reason.

The officer asked Moss if he could scan the barcode in the truck for the vehicle's information. Moss shrugged as if to indicate his consent. The officer opened the driver side door and did not see a barcode, but he did notice a container of Ozium, an air deodorizer spray, in the driver side storage area.

The officer asked Moss if he had ever been to California before, and Moss said that he had been to California approximately six times in the past ten years.

While still completing the warning citation, the officer told Moss that from his experience, people involved in marijuana growing will use water tanks. The officer asked

Moss if the water tanks were going to be used for a marijuana grow, and Moss replied, "Not me."

The officer asked Moss if there were any drugs in the vehicle, and Moss replied, "Nope." The officer asked Moss if there were any guns in the vehicle, and Moss replied, "Nope." The officer then asked if there were large amounts of money in the vehicle, and Moss paused before saying, "Nope." Moss then said, "I carry large amounts of money." The officer asked Moss if he had large amounts of money in the vehicle, and Moss stared at his phone and said, "I don't think . . . no."

The officer asked Moss for consent to search the vehicle and trailer. Moss asked why, and the officer explained his observations that led him to believe Moss might be involved in trafficking. Moss did not say yes or no to the question. Moss then stated that he was travelling to California, back to Missouri, down to Arkansas, and then to Rhode Island.

The officer again asked Moss if there were guns, drugs, or money in the vehicle. Moss responded, "Should not be, and I hope not be." The officer again asked for consent to search. Moss turned around and looked toward the truck and trailer and said, "There it is." The officer asked if that meant he could conduct a search, and Moss said, "Yes, I ain't got nothin' to hide." Moss then said, "You can take your dog around it." During this time, Moss was still trying to obtain proof of insurance.

A backup officer who had previously arrived on scene deployed his certified, reliable canine—trained to detect the odor of illegal drugs—to complete a free air sniff. The canine alerted to the presence of the odor of illegal drugs coming from both the truck and the trailer.

During the search of the truck, another backup officer observed that the rear bench seat of the truck was folded up. The backup officer observed a brown paper bag partially exposed behind the folded seat. The backup officer retrieved the brown paper bag from underneath the folded seat and discovered a large amount of United States currency inside the paper bag.

3

When Moss saw that the backup officer had found the paper bag with the currency, Moss became upset and put his hands up in frustration and sat down on a rock.

Investigators placed the currency about 30 yards away from the traffic stop in an open field littered with trash, bushes, dirt, and other debris. A backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. This canine was a different canine than the one that had been deployed earlier in the vicinity of the truck and trailer. This canine's handler was a different backup officer than the backup officer who had deployed the other canine in the vicinity of the truck and trailer. This canine found and alerted to the odor of illegal drugs coming from the currency.

A special agent of the Drug Enforcement Administration arrived on scene and engaged Moss in conversation. The conversation entailed the following:

a. Moss stated that he was delivering the water tanks to a friend whom he identified as Sean Solum (Solum) in the area of Willits, California.

b. Moss was at first adamant that he did not know what Solum was using the tanks for, but Moss later admitted that Solum told him that Solum was in the process of starting a large marijuana grow operation in northern California.

c. Moss gave conflicting statements about the source of the United States currency in his possession, the sources of his annual income, and his relationship with Solum.

At the conclusion of the traffic stop, the Drug Enforcement Administration seized the currency.

A later official bank count determined that the currency totaled $32,000. The currency was composed of the following denominations:

a. $7,000 in $20 bills (350 bills);

b. $2,200 in $50 bills (44 bills); and

c. $22,800 in $100 bills (228 bills).

Currency involved in the illegal-drugs trade is often composed heavily of small denominations, particularly $20 bills.

The $32,000 in United States currency is the entirety of the defendant currency.

## II.   PROCEDURE

On December 22, 2021, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $32,000 in United States currency (defendant property):

   a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

   b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

   c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and

   d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq. (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

On January 18, 2022, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 5, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 6.

Pursuant to the Order, ECF No. 5, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant

property: the Complaint, ECF No. 1, the Order, ECF No. 5, the Summons and Warrant, ECF No. 6, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Under the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on Stephen Hanson, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 5; Summons and Warrant, ECF No. 6.

On January 31, 2022, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 7.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from February 25, 2022, through March 26, 2022. Notice of Filing Proof of Publication, ECF No. 9.

On February 8, 2022, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Tommy Gene Moss by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 8-1, p. 3-26.

On February 8, 2022, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Justin Champagne, Esq., from the Law Offices of Richard P. Davies on Mill Street, by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 8-1, p. 3-21, 27-31.

On February 8, 2022, the United States Attorney's Office served and attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Justin Champagne, Esq., from the Law Offices of Richard P. Davies on Washington Street, by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 8-1, p. 3-21, 32-36.

On June 8, 2022, the United States filed a Stipulation and Settlement Agreement for Entry of Judgment of Forfeiture as to Tommy Gene Moss, and Order, regarding the $32,000 in United States currency. Claimant waived, among other things, service of process. Stipulation and Settlement Agreement, ECF No. 10.

On July 15, 2022, the Court entered the Order granting the Stipulation and Settlement Agreement for Entry of Judgment of Forfeiture as to Tommy Gene Moss, and Order. Order Granting Settlement Agreement, ECF No. 11.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On July 20, 2022, the United States filed a Motion for Entry of Clerk's Default against the $32,000 in United States currency and all persons or entities who may claim an

7

interest in the defendant property in the above-entitled action, except for Tommy Gene Moss. Motion for Entry of Clerk's Default, ECF No. 12.

On August 8, 2022, the Clerk of the Court entered a Default against the $32,000 in United States currency and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except for Tommy Gene Moss. Entry of Clerk's Default, ECF No. 13.

Tommy Gene Moss is neither a minor nor an incompetent person.

### III. THE REQUIREMENTS FOR DEFAULT WERE MET

#### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

/ / /

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B. The Forfeiture Requirements for Default Were Met.**

    a. <u>Judgment Sought</u>

Under Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

    b. <u>Default and Entry of Default</u>

As shown above, the United States requested entry of Clerk's Default against the $32,000 in United States currency and all persons or entities who may claim an interest in the defendant property, except for Tommy Gene Moss. ECF No. 12. The Clerk entered the Default as requested. ECF No. 13.

    c. <u>Notice</u>

Under Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 9. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. ECF No. 8.

    d. <u>Legal Sufficiency of the Complaint</u>

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint

identified the statute under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 1.

      e. Status of Potential Claimants

Tommy Gene Moss has entered into a Stipulation and Settlement Agreement with the United States. ECF No. 11.

No person or entity has filed a claim, and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

      a. The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) (brackets added), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

      b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

      d. The Amount of Money at Stake

The value of the defendant property was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.

/ / /

*United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and proceeds traceable to the violations.

### e. There Are No Possible Disputes of Material Fact

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

a.  is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

b.  is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

c.  is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

d.  is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, a specified unlawful activity as defined in 18 U.S.C.

§§ 1956(c)(7)(A) and 1961(1)(D), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### f. Default Was Not the Result of Excusable Neglect

The record shows that Tommy Gene Moss was properly served with the Complaint, Order, Summons and Warrant, and the Notice, ECF No. 8, and failed to file a claim and answer to the Complaint.

Tommy Gene Moss has entered into a Stipulation and Settlement Agreement with the United States. ECF No. 11.

The record shows that all other persons or entities who may claim an interest in the defendant property were properly served by publication at www.forfeiture.gov, ECF No. 9, and failed to file a claim and an answer to the Complaint.

There is no evidence of excusable neglect.

### g. Public Policy Does not Prevent Default Judgment

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, all other persons or entities who may claim an interest in the defendant property did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, all persons or entities who may claim an interest in the defendant property have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate except for Tommy Gene Moss. *See Covenant Care California*, 2018 WL 3429669, at *2.

/ / /

## IV. JUDGMENT

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to the $32,000 in United States currency and all persons or entities who may claim an interest in the defendant property, except for Tommy Gene Moss, and Final Judgment of Forfeiture as to $32,000 in United States currency and Tommy Gene Moss.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against the $32,000 in United States currency and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except for Tommy Gene Moss.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $32,000 in United States currency and Tommy Gene Moss.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Tommy Gene Moss forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the property to the United States.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

DATED: **August 25, 2022.**